<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RIANNA MICHELE BARATTA, <br><br> Plaintiff, <br><br> v. <br><br> FREEHOLD AUTOMOTIVE LIMITED INC., *et al.*, <br><br> Defendants. | Civil Action No. 25-2712 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Freehold Automotive Limited Inc.'s ("Freehold Automotive"), George Mackey, Kyle Dulock, and Nicole Helicher's (collectively, "Defendants") Motion to Dismiss (ECF No. 26) Plaintiff Rianna Michele Baratta's ("Plaintiff") Third Amended Complaint (ECF No. 25), and Plaintiff's Emergency Motion for a Temporary Restraining Order ("TRO") (ECF No. 35).[1] Plaintiff opposed Defendants' Motion to Dismiss (ECF No. 27), and Defendants replied (ECF No. 31). Defendants opposed Plaintiff's Emergency Motion for a TRO (ECF No. 43), and Plaintiff replied (ECF No. 44). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For

---

[1] Plaintiff also submitted a Motion to Strike a notice filed by non-party, Joanna Mercado (ECF No. 39), and an unopposed Motion to Seal Exhibits (ECF No. 40), submitted in support of her Supplement to Motion to Strike (ECF No. 41). The Court, exercising its discretion, does not consider the non-party notice (ECF No. 38) in adjudicating the instant Motion to Dismiss and Emergency Motion for a TRO, and therefore declines to reach the merits of Plaintiff's Motion to Strike (ECF No. 39) at this time. The Court further grants Plaintiff's unopposed Motion to Seal Exhibits (ECF No. 40).

the reasons stated below, the Court grants Defendants' Motion to Dismiss and denies Plaintiff's Emergency Motion for a Temporary Restraining Order.

## I.   BACKGROUND[2]

### A.   Factual Background

Plaintiff visited Freehold Automotive on November 25, 2024, to attempt to purchase a motor vehicle. (Third Am. Compl. ("TAC") ¶ 1, ECF No. 25.) While there, Plaintiff executed a credit application to purchase an automobile. (*Id.*) As part of the transaction, Plaintiff provided Freehold Automotive with Social Security Administration ("SSA") Form 89, Authorization for the SSA to verify Plaintiff's Social Security Number ("SSN"). (*Id.* ¶¶ 3-4.) Freehold Automotive, thereafter, conducted multiple "unauthorized credit inquiries exceeding the scope of consent as specified by Plaintiff," specifically with: Hyundai Motor Finance for $41,416.80; Santander for $39,467; and Capital One for $36,030. (*Id.* ¶¶ 5-6.) Plaintiff received credit approval with Hyundai Motor Finance. (*Id.*) Plaintiff was then presented with a "Retail Installment Sales Contract" ("RISC"), which Plaintiff alleges "simultaneously functions as a Consumer Credit Contract" ("CCC"). (*Id.* ¶ 7.) The RISC includes a "Holder Rule Notice." (*Id.* ¶¶ 9-11.) The RISC was specially indorsed as follows: "'Pay To: RIANNA MICHELE BARATTA,' 'Credit to HYUNDAI MOTOR FINANCE,' signed as Beneficiary, 'WITHOUT RECOURSE.'" (*Id.* ¶ 13.) The RISC includes the following assignment clause: "Seller assigns its interest in this contract to HYUNDAI MOTOR FINANCE under the terms of Seller's Agreement with assignee." (*Id.* ¶ 37.)

Plaintiff entered into a purchase agreement with Freehold Automotive and executed the "negotiable instrument." (*Id.* ¶ 16.) Freehold Automotive released the vehicle to Plaintiff that same

---

[2] For the purpose of considering the instant motions, the Court accepts all factual allegations in the TAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

day. (*Id.*) Freehold Automotive informed Plaintiff that she would have to return with the vehicle "and sign a new contract if" the "funding was not secured" and held the vehicle's second key. (*Id.* ¶ 17.) On November 29, 2024, one of Freehold Automotive's employees texted Plaintiff informing her of "'full funding' approval and acceptance[,]" and instructed her to pick up the second key. (*Id.* ¶ 21.) Defendants did not deliver a Certificate of Title or release of lien to Plaintiff. (*Id.* ¶ 24.) Plaintiff's credit score, thereafter, decreased by ninety points in February 2025, and an additional one-hundred and thirty points on March 17, 2025. (*Id.* ¶ 28.) On April 3, 2025, Plaintiff had a credit card application denied due to multiple hard inquiries and "the only delinquency ever on her report." (*Id.*)[3] Plaintiff made several "demands for assurance and opportunity to cure" including: "the Notice of Priority Interest[;] Hyundai Breach Notice[;] Revocation of Power of Attorney[;] Final Notice to Cure[;] and the [] Affidavit Notice of Liability Regarding Trespass Fee Schedule and Remedy[.]" (*Id.* ¶ 29.) Defendants provided no such "assurances[.]" (*Id.* ¶ 30.) Plaintiff revoked Freehold Automotive's Power of Attorney on January 17, 2025. (*Id.* ¶ 50.)

**B.    Procedural Background**

Plaintiff initially filed her Complaint on April 15, 2024. (Compl., ECF Nos. 1, 4.) Plaintiff then filed an Amended Complaint (Am. Compl., ECF No. 7) before filing a Second Amended Complaint (Second Am. Compl., ECF No. 8). Defendants filed a Motion to Dismiss (Defs.' First Mot. to Dismiss, ECF No. 13) and Plaintiff filed the operative TAC (TAC). The TAC asserts five causes of action: (1) violations of the Fair Credit Reporting Act (the "FCRA") ("Count One"); (2) violations of the Truth in Lending Act (the "TILA") ("Count Two"); (3) violations of the New Jersey Consumer Protection Act (the "NJCA") ("Count Three");

---

[3] The alleged facts do not provide the nature of the delinquency.

(4) breach of contract ("Count Four"); and (5) violations of the Federal Debt Collections Practices Act (the "FDCPA") ("Count Five"). (*See* TAC ¶¶ 60-78.)

Defendants, thereafter, filed the instant Motion to Dismiss. (Defs.' Mot. to Dismiss, ECF No. 26.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 27), and Defendants replied (Defs.' Reply Br., ECF No. 31). Plaintiff subsequently filed an Emergency Motion for a TRO. (Pl.'s TRO Mot., ECF No. 35.) Defendants opposed Plaintiff's Emergency Motion for a TRO (Defs.' Opp'n Br. to TRO, ECF No 43), and Plaintiff replied (Pl.'s TRO Reply Br., ECF No. 44). Plaintiff also filed a Motion to Strike Frivolous Non-Party Notice (Pl.'s Mot. to Strike, ECF No. 39) from non-party, Joanna Mercado (Non-Party Notice, ECF No. 38).

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    Motion for a TRO

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). A preliminary injunction or TRO may be granted only if a plaintiff establishes that: (1) "[she is] likely to succeed on the merits of [her] claims"; (2) "[she is] likely to suffer irreparable harm without relief"; (3) "the balance of harms favors [her]"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in [her] favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.").

## III.     DISCUSSION

The Court first addresses Defendants' Motion to Dismiss. Defendants make seven arguments in support of dismissing the TAC: (1) Plaintiff fails to identify a provision of the FCRA that Defendants breached; (2) Plaintiff fails to identify any disclosure requirements not met pursuant to the TILA; (3) Plaintiff fails to identify conduct that could constitute an unconscionable business practice under the NJCFA; (4) Plaintiff fails to identify any contractual provision Defendants breached; (5) Defendants cannot be liable under the FDCPA for the actions of Hyundai Motor Finance and Hyundai Capital America; (6) Plaintiff fails to identify actions which would subject individual Defendants to liability; and (7) the damages sought are incompatible with Plaintiff's claims, and she does not plead malice. (*See generally* Defs.' Moving Br., ECF No. 26-1.) The Court addresses each argument in turn.

### A.     Multiple Credit Checks, FCRA (Count One)

Defendants argue that the provision of the FCRA cited by Plaintiff does not prohibit a creditor from running multiple credit checks but provides that a credit check must be run for a permissible purpose certified by a prospective user. (*Id.* at 8.) Defendants contend that Freehold Automotive's running of Plaintiff's credit check was for a legitimate purpose because Plaintiff was in the process of buying a car on credit. (*Id.* at 8-9.)

The FCRA was "'enacted . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 91 (3d Cir. 2025) (quoting *Kirtz v. Trans Union LLC*, 46 F.4th 159, 162 (3d Cir. 2022) (internal quotation marks omitted)). 15 U.S.C. § 1681b(f), accordingly, prohibits anyone from obtaining or using a credit report unless "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 192 n.10 (3d Cir. 2009). "[T]o state a § 1681b(f)[5] claim, the plaintiff must plausibly allege: '[(1)] that there was a 'consumer report' within the meaning of the statute; [(2)] that the defendant used or obtained it; and [(3)] that the defendant did so without a permissible statutory purpose.'" *Migliore*, 160 F.4th at 91 (quoting *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014)).

Here, Plaintiff plausibly alleges that Freehold Automotive obtained and used her credit report. (TAC ¶¶ 5-6.) The question is whether Plaintiff plausibly alleges that Freehold Automotive accessed her credit report for an impermissible purpose. The Court concludes that Plaintiff does not adequately plead this element. "A creditor is permitted to obtain a consumer's credit report to use the information in connection with a credit transaction involving the consumer." *Migliore*, 160 F.4th at 91 (internal quotation marks omitted) (quoting *Bibbs v. Trans Union LLC*, 43 F.4th 331, 341 n.15 (3d Cir. 2022)). Plaintiff pleads that she was in the process of purchasing a car on credit. (*See* TAC ¶¶ 1-6.) Freehold Automotive therefore was permitted to run credit checks to determine whether Plaintiff qualified for a line of credit. *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp.

---

[5] The Court notes that Plaintiff also cites to 15 U.S.C. §§ 1681n, 1681o in Count One of the TAC. (TAC ¶ 60.) These subsections, however, only provide for damages arising out of willful noncompliance and negligent noncompliance with the Fair Credit Reporting Act, respectively, but do not set forth independent standards. 15 U.S.C. § 1681n (providing "[c]ivil liability for willful noncompliance"); 15 U.S.C. § 1681o (providing "[c]ivil liability for negligent noncompliance").

3d 274, 297 (D. Conn. 2015) (finding that a defendant's pulling of a plaintiff's credit report in response to plaintiff's application for a loan "fit[] squarely within the 'permissible purposes' for obtaining a credit report"); *see also* 15 U.S.C. § 1681b(a)(3)(A) (explaining that a credit report may be furnished to a person "intend[ing] to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to" the consumer).

The credit application signed by Plaintiff and at issue here, moreover, expressly authorized Freehold Automotive to obtain Plaintiff's consumer credit report from "one or more consumer reporting agencies in connection with the proposed transaction." (Ex. A to TAC, Credit Application 41, ECF No. 25; *see also id.* (stating: (1) "[y]ou understand and agree that you are applying for credit by providing the information to complete and submit this credit application"; (2) "[y]ou authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us . . . and . . . you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to apply for credit"; and (3) "[y]ou agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies in connection with the proposed transaction" and that "we or any affiliate of ours may obtain one or more

consumer credit reports on you at any time during the term of your financing").)[6] These provisions

specifically informed Plaintiff before the credit check was run, that multiple credit checks could

be run throughout the process. (*See id.*)

The Court therefore finds that Plaintiff fails to adequately allege that Freehold Automotive

used Plaintiff's Credit Report without a permissible purpose and dismisses Count One of the TAC.

**B.      The TILA (Count Two)**

Defendants argue that Count Two of the TAC should be dismissed because Plaintiff does

not adequately plead that Defendants violated the TILA. (Defs.' Moving Br. 10-12.) The Court

agrees. Plaintiff asserts two theories of alleged violations of the TILA: (1) the RISC acted as a

CCC and was ambiguous and unenforceable because it was simultaneously labeled as a RISC and

a CCC; and (2) Defendants failed to provide accurate accounting and truthful reporting. (TAC

¶ 61.)

---

[6] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). An exception to the general rule, however, is that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (alteration in original) (internal quotation marks omitted); *see Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013). While neither party explicitly requests the Court to consider the underlying contracts, Plaintiff relies on them in her Complaint and attached them to the TAC as well. (*See generally* Ex. A-T to TAC, ECF No. 25.) Because the Credit Application, RISC, and You Owe, We Owe documents are integral to or explicitly relied on in the Complaint, the Court will consider these documents and the arguments the parties make relying on these documents. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

> The TILA was enacted in order 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'

*Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 330 (D. Del. 2010) (citations omitted). The "TILA requires creditors 'to make certain prominent disclosures when extending credit, including the amount financed, all finance charges, and the [annual percentage rate ("APR")].'" *Id.*; *see also In re United Cos. Fin. Corp.*, 267 B.R. 524, 528 (Bankr. D. Del. 2000) ("Disclosures required under TILA must be provided before the transaction is consummated." (citing 15 U.S.C. § 1638(b)(1))).

Plaintiff asserts that Defendants violated 15 U.S.C. §§ 1641(e), 1641(a) by labeling the contract a RISC and a CCC. (TAC ¶ 61.) Section 1641(e), however, provides that assignees are liable for consumer credit transactions secured by real property. 15 U.S.C. § 1641(e). Because this transaction did not involve real property, however, Plaintiff fails to sufficiently plead that Defendants violated 15 U.S.C. § 1641(e).

Plaintiff, moreover, fails to adequately allege that the RISC acted as a CCC and was thus ambiguous and unenforceable. Section 1641(a) provides that an action may be maintained against an assignee of a creditor if the action being brought "is apparent on the face of the disclosure statement" if, for example, "a disclosure is incomplete or inaccurate" on its face, or "does not use the . . . required . . . terms." 15 U.S.C. § 1641(a). The RISC here, however, included the required terms and was complete and accurate on its face. (*See generally* Ex. B. to TAC, RISC, ECF No. 25.) The RISC, for example, is clearly labeled: "Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)[.]" (*Id.*) The Holder Rule Notice that Plaintiff contends renders the RISC a CCC is also clearly labeled as a "Notice" and states that: "any holder of this

consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (*Id.*) Directly next to this provision, moreover, the RISC provides the TILA disclosures including the amount financed, the finance charge, the APR, the total number of payments, the amount of the payments, when the payments are due, the amount for a late charge, and the conditions in which a late charge will be assessed. (*Id.*) These disclosures satisfy the requirements pursuant to the TILA as they properly disclose the terms of the agreement. (*See* RISC); *In re United Cos. Fin. Corp.*, 267 B.R. at 528.

The RISC further meets the definition of a RISC under New Jersey Law because it was an agreement entered into between a retail seller and buyer for personal purposes and paid in more than two installments over a period of time. (*See* RISC); *Woo-Padva v. Midland Funding, LLC*, No. A-1996-21, 2023 WL 6157245, at *6 n.5 (N.J. Super. Ct. App. Div. Sep. 21, 2023) (explaining that a RISC is a retail contract "evidencing an agreement to pay the retail purchase price of goods or services, which are primarily for personal, family or household purposes, or any part thereof, in two or more installments over a period of time" (quoting N.J. Stat. Ann. 17:16C-1(b))), *cert. denied*, 314 A.3d 1267 (N.J. 2024)).

The Holder Rule Notice at issue, moreover, does not change the title of or type of contract the parties entered into, but is the Federal Trade Commission's (the "FTC") required notice. *See, e.g.*, 16 C.F.R. § 433.2 (providing that any sale to consumers in or affecting commerce must contain the Holder Rule Notice included in the RISC); *see also Jordan v. Chrysler Credit Corp.*, 73 F. Supp. 2d 469, 474 (D.N.J. 1999) (describing the FTC holder rule). Courts have routinely found RISCs including the FTC holder notice to be valid and note that the Holder Rule Notice is required.

11

*E.g.*, *Henry v. Vantage Credit Union*, No. 20-1865, 2021 WL 2187908, at *5-6 (E.D. Mo. May 28, 2021) (finding that a RISC that included an FTC holder notice was valid); *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 635 (E.D. Va. 2000) (explaining that all installment contracts must include the FTC holder notice).

Finally, Plaintiff's allegation that Defendants "fail[ed] to provide accurate accounting and truthful reporting" (TAC ¶ 61) is insufficiently pled as it is conclusory, and Plaintiff offers no other factual allegations to support it (*see generally id.*). The Court, accordingly, dismisses Count Two of the TAC.

### C.    The NJCFA (Count Three)

Defendants argue that Count Three should be dismissed because Defendants' actions were not unconscionable. (Defs.' Moving Br. 12-15.) The NJCFA "was designed to combat sharp practices and dealings that victimized consumers by luring them into purchases through fraudulent or deceptive means." *McLaren v. UPS Store, Inc.*, No. 21-14424, 2025 WL 3238934, at *8 (D.N.J. Nov. 20, 2025) (citation modified) (citation omitted). "It outlaws 'the use of unconscionable or abusive commercial practices, as well as deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely' thereon." *Id.* (citation modified) (quoting *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 471 (N.J. 2024)).

To adequately state a NJCFA claim, plaintiffs must allege that: "(1) [d]efendants engaged in 'unlawful conduct[;]' (2) [p]laintiffs suffered 'an ascertainable loss[;]' and (3) there's a 'causal relationship between the unlawful conduct and the ascertainable loss.'" *Id.* (alterations in original) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). Here, Plaintiff fails to adequately state a claim because she does not sufficiently allege that Defendants engaged in

12

unlawful conduct. *Frederico v. Home Depot*, No. 05-5579, 2006 WL 624901, at *5 (D.N.J. Mar. 10, 2006), *aff'd*, 507 F.3d 188 (3d Cir. 2007) (explaining that plaintiff failed to state a NJCFA claim because she failed to adequately plead that the defendant engaged in any unlawful conduct).

The crux of Plaintiff's claim is that Freehold Automotive did not deliver the second key at the time of the sale and that Freehold Automotive did not deliver the certificate of title after it received the funding from Hyundai Motor Finance. (TAC ¶¶ 31, 62.) Plaintiff alleges that this violated N.J. Stat. Ann. § 56:8-2. (*Id.*) Plaintiff, however, received the second key on November 29, 2024, just four days after leaving Freehold Automotive with the vehicle. (*Id.* ¶ 21.) Plaintiff also consented to such withholding of the key when she signed the "We Owe, You Owe" agreement which listed the second key as an item that Freehold Automotive owed Plaintiff and listed the following items that Plaintiff owed the dealer to complete the transaction: (1) the title to the trade in vehicle; (2) all monies; and (3) a valid insurance card. (Ex. D to TAC, We Owe, You Owe, ECF No. 25.) Accepting the allegations in the TAC as true and considering the express terms of the contracts Plaintiff signed, Plaintiff fails to adequately allege that Defendants engaged in unlawful conduct by withholding the second key prior to Plaintiff delivering the title for the trade in, securing funding, and delivering a valid insurance card. (*Id.*)

As to Plaintiff's assertion that Defendants engaged in unlawful conduct by withholding the title, Plaintiff is not entitled to receive the title until she fully satisfies the terms of the loan. *See e.g.*, N.J. Stat. Ann. § 39:10-11(B) (explaining that when selling a financed vehicle, a certificate of ownership shall be delivered to "the holder of the encumbrance or secured party"). Plaintiff therefore fails to state a claim pursuant to the NJCFA, and the Court, accordingly, dismisses Count Three of the TAC.

13

### D.     Breach of Contract (Count Four)

Defendants argue that Count Four should be dismissed because Plaintiff was given the second key when she was contractually entitled to it, and Plaintiff is not contractually entitled to "clean title." (Defs.' Moving Br. 15-16.)

To state a claim for breach of contract, a plaintiff must adequately allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Days Inns Worldwide, Inc. v. VNS Hotels, Inc.*, No. 24-5633, 2025 WL 1040412, at *3 (D.N.J. Apr. 8, 2025) (citation omitted).

Here, Plaintiff fails to adequately allege a breach of contract claim because, as discussed above, Plaintiff agreed to receive the second key after delivering the title to her trade in, financing payment, and proof of insurance, and she received the second key at that time. (We Owe, You Owe; TAC ¶ 21.) Moreover, by the terms of the contract Plaintiff signed Plaintiff is not entitled to the title until the loan is paid in full. (*See* RISC); N.J. Stat. Ann. § 39:10-11(B). Plaintiff, therefore, fails to plead that Defendants breached the RISC or any other contract. (*See* RISC.)

Plaintiff appears to allege that once Hyundai Motor Finance issued payment to Freehold Automotive, she fully satisfied her contractual obligations. (*See* TAC ¶ 63.) Accepting as true Plaintiff's allegations in the TAC, this contention is both factually and legally incorrect. Hyundai Motor Finance paid Freehold Automotive the purchase price and was assigned the RISC. (RISC.) The RISC remains in full effect, with Hyundai Motor Finance now standing in the shoes of Freehold Automotive. *See, e.g.*, *Migliaccio v. Ally Bank*, No. 24-307, 2025 WL 630886, at *3 (D. Me. Feb. 27, 2025) (noting that the RISC was in effect after the dealership assigned it to the bank that financed the purchase), *R. & R. adopted*, No. 24-307, 2025 WL 2721018 (D. Me. Sep. 24, 2025), *motion to cert. appeal denied*, No. 24-307, 2025 WL

14

3171187 (D. Me. Nov. 13, 2025). Plaintiff, accordingly, has failed to adequately allege that she has performed under the contract.

Plaintiff also alleges that Defendants breached the contract by continuing to act under a revoked Power of Attorney and by failing to provide adequate assurance of performance. (TAC ¶¶ 65-66.) Plaintiff, however, fails to sufficiently allege either. (*See generally* TAC.) Plaintiff, in fact, fails to adequately allege that Defendants have since acted in any capacity under the authority of a Power of Attorney since she revoked it on January 17, 2025. (*See generally id.*) While Plaintiff alleges that Defendants continued to act under a revoked power of attorney by purportedly failing to remove their security interest (TAC ¶¶ 30-47, 50-56; *see* Ex. L to TAC, Notice of Priority Interest, ECF No. 25; Ex. R to TAC, Revocation of Power of Attorney, ECF No. 25), the TAC is devoid of any factual allegations that plausibly allege that Defendants acted under the authority of a power of attorney at all (*see generally* TAC). Plaintiff's requests for adequate assurance of performance, moreover, were based on her inadequately pled allegations discussed above regarding "clean title." (*See, e.g.*, TAC ¶ 46.) Plaintiff therefore fails to adequately allege that Defendants breached the RISC or any other contract by failing to respond with an adequate assurance of performance.

The Court, accordingly, dismisses Count Four of the TAC.

### E.    The FDCPA (Count Five)

Defendants argue that Count Five should be dismissed because there is no allegation that Defendants engaged in any harassing collection practices and cannot be vicariously liable for the alleged conduct of non-parties. (Defs.' Moving Br. 16-19.)

Pursuant to the FDCPA, "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt." 15 U.S.C. § 1692d. Only "an entity which . . . meets the definition of 'debt collector[,]' [however,] may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) (abrogated on other grounds). A debt collector is a person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed." 15 U.S.C. § 1692a(6).

To state a vicarious liability claim under the FDCPA, a plaintiff must adequately allege that: "(1) the principal actually controlled[] or had the right to direct or control the agent; and (2) the parties consented to one's acting on behalf of the other." *Church v. J. Ritter L. P.C.*, No. 23-1709, 2024 WL 1052159, at *6 (D.N.J. Mar. 11, 2024) (citation modified). *First*, Plaintiff has failed to adequately allege that Defendants controlled or had the right to direct or control Hyundai Motor Finance. (*See generally* TAC.) As discussed above, moreover, Defendants assigned the RISC to Hyundai Motor Finance. (*See* RISC.) *Second*, Plaintiff does not plead any allegations that Hyundai Motor Finance and Defendants consented to Hyundai Motor Finance acting on behalf of Defendants other than the assignment of the RISC. *Sefton v. Toyota Motor Sales U.S.A.*, No. 09-3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) (finding plaintiff's conclusory statements about an agency relationship insufficient to state a claim). Defendants, additionally, are not debt collectors pursuant to the statute. *See* 15 U.S.C. § 1692a(6). Plaintiff has also failed to adequately plead that Hyundai Motor Finance is an agent of Defendants based on the RISC because the RISC unequivocally assigns Defendants' rights in the RISC to Hyundai Motor Finance and an assignee is not the agent of the assignor. (*See* RISC); *Sefton*, 2010 WL 1506709, at *3.

16

Other than conclusory statements, Plaintiff has not alleged that Hyundai Motor Finance is an agent of Defendants. (*See generally* TAC); *Sefton*, 2010 WL 1506709, at *3.

The Court, accordingly, dismisses Count Five of Plaintiff's TAC.[7]

### F.    Plaintiff's Emergency Motion for a TRO

Plaintiff filed the instant Emergency Motion for a TRO after the vehicle at issue here was repossessed. (Pl.'s TRO Mot.) In the Motion, Plaintiff requests that the Court enjoin Freehold Automotive, Hyundai Motor Finance, Secure Collateral Management LLC, Exclusive Recovery, and "their officers, employees, independent contractors, agents, repossession companies, storage facilities, and any persons acting in concert with them" from: (1) selling or otherwise disposing of the vehicle; (2) charging fees related to the vehicle's repossession; (3) engaging in further repossession or other "adverse credit-related conduct"; (4) reporting negative credit information to consumer reporting agencies; and (5) altering, destroying, withholding, or modifying records or communications relating to the contract, title, funding, servicing, or repossession of the vehicle. (*Id.* at 14.) Plaintiff also requests that the Court order: (1) the preservation of the vehicle, maintenance of insurance and "adequate safeguards for the vehicle," disclosure and preservation of all repossession and title related documents; (2) the return of the vehicle or preservation of the vehicle without "movement, sale, transfer, concealment, or disposal"; and (3) preservation of all documents and evidence.[8] (*Id.* at 14-15.)

---

[7] Because the Court dismisses the TAC in its entirety, it does not address Defendants' remaining arguments regarding individual liability or damages.

[8] Plaintiff additionally requests leave to supplement the pleadings and an expedited briefing schedule. (Pl.'s TRO Mot. 15-16.) As the Court is denying Plaintiff's Emergency Motion for a TRO and dismissing the TAC, to the extent Plaintiff wishes to supplement the pleadings, Plaintiff may file an amended complaint.

Because the Court is dismissing Plaintiff's TAC in its entirety, however, Plaintiff has no likelihood of success on the merits and her Emergency Motion for a TRO is denied. *Hollis-Arrington v. PHH Mortg. Corp.*, No. 05-2556, 2005 WL 3077853, at *12 (D.N.J. Nov. 15, 2005) ("Because the Court is dismissing [p]laintiffs' [c]omplaint in its entirety, [p]laintiff has clearly not been able to show a probability of success on the merits"), *aff'd*, 205 F. App'x 48 (3d Cir. 2006). The Court also notes that even if Plaintiff could demonstrate a likelihood of success on the merits, she fails to demonstrate irreparable harm because damages here would suffice to compensate both a repossessed vehicle and the purchase of a new one. *See Logic Tech. Dev. LLC v. Levy*, No. 17-4630, 2021 WL 3884287, at *2 (D.N.J. Aug. 31, 2021) (explaining that a plaintiff must show that "compensation in money" would be inadequate to "establish irreparable harm"); *Kelly v. Pier*, No. 16-3417, 2017 WL 3397030, at *14 (D.N.J. Aug. 8, 2017) ("'Irreparable harm' requires a plaintiff to show that money damages are inadequate."). The Court, accordingly, denies Plaintiff's Emergency Motion for a TRO.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is granted, and the TAC is dismissed without prejudice. Plaintiff's Emergency Motion for a TRO is denied. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: _____2/17/2026_____

18